UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:

CELLO ENERGY, LLC,  Case No: 10-04877

*Debtor*.

CELLO ENERGY, LLC, et al.

*Plaintiff*,  Adv. Proc. No: 11-00031

v.

PARSONS & WHITTEMORE
ENTERPRISES CORPORATION

*Defendant*.

**ORDER GRANTING IN PART AND DENYING IN PART THE DEBTORS'
MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY
RESTRAINING ORDER AND DENYING MOTION TO CERTIFY QUESTION**

C. Michael Smith & Suzanne Paul, Attorneys for the Debtors, Mobile, AL
Jeremy Retherford, Attorney for Parsons & Whittemore, Birmingham, AL

These matters are before the Court on the Debtors' Motion for Preliminary Injunction and Temporary Restraining Order and Motion to Certify Question. The Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(1), and the Court has authority to enter final orders. For the following reasons, the Debtors' motion for a Preliminary Injunction and Temporary Restraining Order is due to be GRANTED in part and DENIED in part and the Debtors' Motion to Certify is due to be DENIED.

1

## FACTS

Cello Energy filed its chapter 11 proceeding on October 19, 2010. Prior to bankruptcy, Cello was involved in litigation with Parsons & Whittemore ("P&W") in the District Court for the Southern District of Alabama. P&W's first lawsuit against Cello ("Cello I") was filed in 2007. Before the jury rendered a verdict in Cello I, P&W filed a second lawsuit ("Cello II") against Cello, Boykin Trust, Vesta Venture, Forest Technologies, Jack Boykin, Lois Boykin, Allen Boykin, and Elisa Rambo on September 25, 2009, seeking to avoid fraudulent transfers made by members of the Boykin family and the entities they control, and seeking to pierce the corporate veil. The District Court held a trial in Cello II on September 27-29, 2010. Before the District Court issued its ruling in Cello II, Cello Energy, Jack Boykin, and Boykin Trust filed bankruptcy petitions. Those cases were administratively consolidated on December 3, 2010.

On October 25, 2010, P&W filed a Motion for Relief from Stay to Continue Resolution of Prepetition Multi-party Litigation. Relief from the automatic stay was granted on December 7, 2010, with two conditions: (1) the stay was to remain in effect as to injunctive relief sought by P&W in Cello II and (2) P&W was not authorized to execute on any judgment without further order of the Bankruptcy Court. On February 3, 2011, the District Court entered an order in Cello II finding that P&W is entitled to recover the following amounts on its fraudulent transfer claims, constructive fraud claims, and actual fraud claims: $700,000 against Boykin Trust; $399,923 against Jack Boykin; $510,000 against Lois Boykin; and a total of $695,000 against Allen Boykin. With regards to P&W's piercing the corporate veil claims, the District Court found that P&W is entitled to recover $10,431,560.50 from Lois Boykin and Allen Boykin jointly and severally. The Order also stated that P&W is only entitled to recover from Cello, Boykin Trust, Allen Boykin, Jack Boykin, and Lois Boykin, jointly and severally, a net total

2

amount of $10,431,560.50 for these findings and for the jury award in the previous Cello I litigation.

On March 6, 2011, Cello, Boykin Trust, and Jack Boykin filed this adversary proceeding against P&W seeking a preliminary injunction order restraining P&W from initiating actions to collect on its judgment against Lois Boykin. P&W objected on March 11, 2011, arguing that Lois Boykin is a non-debtor and requesting that the Court deny the application for a preliminary injunction. A hearing in this matter was held on March 29, 2011.

At the hearing, Jack Boykin testified that he is the owner and CEO of Cello and that he is the Chairman of Boykin Trust. He testified that his home is owned by Lois Boykin and that they share their home with their son, Allen, and a granddaughter of whom Allen has joint custody. He testified that he spends 100% of his time working on the reorganization of the debtor entities or in developing new contract opportunities with other companies. At the conclusion of the hearing, this matter was taken under advisement. After the hearing, the Debtors filed a Motion to Certify Question to the Court of Appeals seeking to have the Alabama Supreme Court address "the unresolved issue of whether Alabama law permits a representative of a debtor corporation to bring an alter ego claim against the corporation's former principal." The Court has also taken that matter under advisement.

LAW

The Debtors raise two arguments in support of the Motion for Preliminary Injunction. First they argue that the Court should use the powers granted to it under 11 U.S.C. § 105 to enter a preliminary injunction against P&W collecting on its debt from Mrs. Boykin. Second, they argue P&W improperly asserted the fraudulent transfer and piercing the corporate veil claims in

Cello II because those causes of action are property of the bankruptcy estate. Each argument will be addressed in turn.

I)     Preliminary Injunction

A preliminary injunction or temporary restraining order may be imposed at the court's discretion under 11 U.S.C. § 105 where the moving party shows:

(1) It has a substantial likelihood of success on the merits;
(2) Irreparable injury will be suffered unless the injunction issues;
(3) The threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and
(4) If issued, the injunction would not be adverse to the public interest.

*See Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000). In this case, the Debtors have not satisfied the requirements for the entry of a preliminary injunction.

First, the Debtors have not met their burden of showing they have a substantial likelihood of success on the merits. With regards to the outcome of the Cello II litigation, the District Court entered a very thorough Order and the Debtors have not shown that the ruling would likely be overturned on appeal. With regards to the Debtors' underlying bankruptcies, they have not yet shown that they will be able to secure financing that would ensure a successful reorganization. The lack of a showing of substantial likelihood of success on the merits of the lawsuit or the bankruptcy cases weighs heavily against grating a motion for a preliminary injunction.

Second, the Debtors have not met their burden of showing that there will be irreparable harm if the motion to issue a preliminary injunction against P&W collecting on its debt from Lois Boykin is denied. Mr. Boykin testified that he devotes all of his time to the reorganization and cannot spend any time looking for an alternative place to stay. He testified that if he has to

4

stop working on the reorganization in order to look for new housing, the bankruptcy estate will be irreparably harmed. However, there was no evidence presented as to why Lois Boykin or Allen Boykin cannot be responsible for finding suitable housing for the family while Mr. Boykin continued working on the reorganization. The Court does not find that irreparable harm will result from not entering a preliminary injunction.

Third, the balancing of harms appears to weigh slightly more in favor of the Debtors. If an injunction is issued, P&W will be delayed in collecting, but retains its rights and will eventually be able to collect interest on its judgment. Further, there was no evidence presented as to a significant risk of a large drop in the value of the homeplace in question at this point in time. Regarding the fourth and final factor of the public interest, it does not appear to weigh heavily in favor of either side.

Overall, because there has not been a showing of a substantial likelihood of success on the merits or a showing of irreparable harm, there are insufficient grounds for issuing a preliminary injunction under § 105. Lois Boykin is not a debtor in this Court, and this is not one of the rare cases where the need to protect the assets of a non-debtor rises to the level of requiring a preliminary injunction under § 105.

I) Property of the Estate

At the hearing on March 29, 2011, the Debtors raised the argument that P&W's actions are stayed by § 362(a)(3) because the fraudulent transfer and piercing the corporate veil claims made by P&W are actually property of the estate under §§ 541 and 544.[1] Section 541 provides that the bankruptcy estate is comprised of all legal and equitable interests of the debtor,

---

[1] The Debtors did not assert that § 548 could be used to deal with the fraudulent transfers. This is because the transfers at issue preceded § 548's two-year statute of limitation period.

5

Case 11-00031   Doc 19   Filed 04/07/11   Entered 04/07/11 09:18:36   Desc Main
Document      Page 5 of 10

including certain causes of action held by the debtor. If such causes of action are property of the estate, then any similar lawsuits brought by individual creditors under state law are subject to the automatic stay. While federal law determines whether an interest is property of the bankruptcy estate, property interests are created and defined under state law. *In re Witko*, 374 F.3d 1040, 1043 (11th Cir. 2004).

**(a) Fraudulent Transfers**

Alabama Code Section 8-9A-4 defines a "fraudulent transfer" as a transfer made to a creditor with actual intent to hinder, delay, or defraud creditors of the debtor. In determining intent, a court may consider several factors including, but not limited to, whether the transfer was to an insider, whether the debtor retained possession or control of the property after the transfer, whether the transfer was concealed, and whether the transfer was of substantially all of the debtor's assets. ALA. CODE § 8-9A-4 (1975). A fraudulent transfer action is brought where the debtor has transferred property in an effort to put it out of the reach of creditors. Because an equitable interest in fraudulently transferred property remains in the debtor, under Alabama law the Trustee or the Debtor-in-Possession has the right to assert a fraudulent conveyance cause of action for the benefit of all creditors. *In re Clark*, 374 B.R. 874, 876 (Bankr. M.D. Ala. 2007). The right to assert fraudulent transfer causes of action belongs to the Debtor-in-Possession, and these claims are property of the bankruptcy estate. *See Id.; see also In re Mortgage America Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983).

In this case, P&W obtained a judgment on its fraudulent transfer claims, but it was not granted relief from the stay to execute on its judgment without further order of the Bankruptcy Court. Permitting P&W to execute on its fraudulent transfer judgment would improperly

exclude other creditors from any recovery that might be made on claims that belong to the Debtor-in-Possession under Alabama law. It is proper to permit the Debtor-in-Possession an opportunity to bring fraudulent transfer claims on behalf of the bankruptcy estate so that all creditors may benefit. If the Debtors do not commence such actions or incorporate them into a plan of reorganization within a reasonable period of time, P&W is free to seek further relief from the stay to execute on its own judgment. For these reasons, a preliminary injunction is appropriate as to P&W's efforts to collect on the judgment rendered in the fraudulent transfer causes of action.

**(b) Piercing the Corporate Veil**

In order to stay P&W's alter ego claims against Lois Boykin, the Debtor must have standing to bring its own alter ego action under 11 U.S.C. §§ 541 or 544. *In re Icarus Holding, LLC*, 391 F.3d 1315 (11th Cir. 2004). Generally, where courts allow a Trustee or Debtor-in-Possession to bring an alter ego claim, they permit it under § 541 rather than § 544 because "the purpose of § 544 is to give a trustee the power of a hypothetical lien creditor to avoid transfers of and liens on the debtor's property when the trustee cannot prevent them under other sections of the bankruptcy code….[m]any courts have completely rejected § 544's use as a means for debtor corporations to bring alter ego actions." *Id.*, 391 F.3d at 1319, n. 4. For this reason, the Court will apply § 541 in determining whether an alter ego action is property of the bankruptcy estate.

In order to bring an exclusive alter ego action under § 541, a bankruptcy trustee's claim should (1) be a general claim that is common to all creditors, and (2) by allowed by state law. *Id.* at 1321. In this case, the alter ego claim at issue is general to all creditors. The only

7

Case 11-00031    Doc 19    Filed 04/07/11    Entered 04/07/11 09:18:36    Desc Main
Document    Page 7 of 10

remaining question is whether, under Alabama law, a representative of a debtor corporation can bring an alter ego claim against the corporation's former principal.

In *In re Icarus Holding, LLC*, 391 F.3d 1315 (11th Cir. 2004), the Eleventh Circuit considered whether a corporate entity can bring an alter ego action against its former principal under Georgia law. Observing no direct law on the issue and a split in the federal bankruptcy courts of Georgia, the Eleventh Circuit certified the question to the Georgia Supreme Court. In considering the certified question, the Georgia Supreme Court noted that the Georgia Courts of Appeals had moved towards permitting a corporate entity to bring such a claim, stating:

> Thus, it is clear that Georgia courts have extended the veil-piercing doctrine beyond the traditional suits by a third-party creditor, to cases where application of the doctrine is necessary "to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or evade contractual or tort responsibility."

*Baillie Lumber Co. v. Thompson,* 612 S.E. 2d 296, 299 (Ga. 2005) (*citing Cheney v. Moore*, 193 Ga. App. 312, 313 (Ga. Ct. App. 1989)). Following the answer of the Georgia Supreme Court, the Eleventh Circuit held that an alter ego claim against a corporation's principal was a cause of action belonging to the bankruptcy estate. *Baillie Lumber Co., LP v. Thompson*, 413 F.3d 1293 (11th Cir. 2005).

Unlike the Georgia courts, there is no indication that Alabama courts have considered extending the veil-piercing doctrine. Rather, Alabama courts appear to retain a reluctance to pierce the corporate veil. *See, e.g., First Health, Inc. v. Blanton*, 585 So.2d 1331, 1334 (Ala. 1991) ("Piercing the corporate veil is not a power that is lightly exercised."); *Ex parte Hornsby*, 958 So.2d 869 (Ala. 2006) (*quoting M&M Wholesale Florist, Inc. v. Emmons*, 600 So.2d 998, 999 (Ala. 1992) ("[C]orporate form is not lightly disregarded, since limited liability is one of the

principal purposes for which the law has created the corporation.")); *Gilbert v. James Russell Motors, Inc.*, 812 So.2d 1269 (Ala. Civ. App. 2001); *Galactic Employer Services, Inc. v. McDorman*, 880 So.2d 434 (Ala. Civ. App. 2003).

There do not appear to be any Alabama cases specifically stating that a corporation cannot pierce its own veil, however that principle is widely accepted:

> Generally, the corporate veil is never pierced for the benefit of the corporation or its stockholders; the procedure is only permissible against a purported stockholder who is using the corporate veil to defraud. Although the corporate veil may be pierced for the benefit of those suing a corporation, it will not be pierced in the reverse manner for the benefit of the corporation or its individual shareholders.

18 AM. JUR. 2D CORPORATIONS § 49. A corporation may not pierce its own veil or apply the alter ego doctrine for its own benefit. 18 C.J.S. Corporations § 20 (Mar. 2011). Alabama's courts have not developed a new body of law on this subject, and its Courts of Appeals have not indicated that they would disagree with the general principle that a corporation cannot pierce its own corporate veil. In the absence of any case law directly to the contrary and any case law implicitly to the contrary, the Court is not inclined to go against general principles and find that Alabama law permits a corporation to pierce its own corporate veil.

The commencement of this bankruptcy case does not grant the Debtor-in-Possession a cause of action that was not available to the pre-bankruptcy corporation. Because it does not appear that the Debtor-in-Possession has standing to pursue an alter ego cause of action under Alabama law, there is no cause to issue a preliminary injunction prohibiting P&W's collection efforts on its judgment against Lois Boykin on the piercing the corporate veil cause of action. For these reasons, the Court is granting the Debtors' Motion for Preliminary Injunction as to the

fraudulent transfer causes of action and am denying the Debtors' Motion as to the piercing the corporate veil causes of action.

I)    Certification of Question to the Alabama Supreme Court

The Court is denying the Debtors' Motion to Certify Question to the Alabama Supreme Court. While there does not appear to be a direct Alabama case on this exact point of law, this decision is based on the general and widely accepted principles that govern alter ego claims. It is the opinion of the Court that these general principles serve as a sufficient basis on which to resolve the issue of whether to issue a preliminary injunction against P&W's collection efforts against Lois Boykin, and it is unnecessary at this time to certify the question to the Alabama Supreme Court. If the District Court or the Eleventh Circuit find that it is appropriate to certify the question, it is within their purview to do so.

Therefore it is ORDERED:

1) The Motion for Preliminary Injunction and Temporary Restraining Order is GRANTED in part and DENIED in part; and
2) The Motion to Certify Question is DENIED.

Dated:   April 7, 2011

_____
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE